518 P.2d 1386

**William B. ROWE, Plaintiff-Appellant,**

v.

**Ross L. BURRUP and Frankie W. Burrup, husband and wife, Defendants-Respondents.**

No. 11176.

Supreme Court of Idaho.

Feb. 19, 1974.

Dean Williams, Kerr & Williams, Blackfoot, for plaintiff-appellant.

Jay H. Stout, Stout & Moss, Blackfoot, for defendants-respondents.

SHEPARD, Chief Justice.

This case involves the conveyance of certain real property and thereafter an action by the grantor seeking to impose a trust, seeking an accounting, asking that the conveyance be treated as a mortgage and that the mortgage be foreclosed, and lastly, damages for forceful entry.

Although a demand for a jury had been made, the case was tried by the court who treated the matter as essentially equitable in nature and attempted in its judgment to balance the equities. The title to the real property was revested in the grantor subject to an equitable lien in the grantee. Damages to, and offsets for, each of the parties were denied. The grantor appeals.

In 1957, plaintiff-appellant Rowe purchased (the Lamberton contract) a motel in Blackfoot, Idaho. The deferred balance was payable in monthly installments and upon discharge of that balance Rowe was to receive a warranty deed. In 1962, Rowe had trouble making his contract payments and following September 1965 made no payments on the contract, and also failed to make tax payments. His health began to decline and he was unable to manage the business.

In 1968, Rowe, who had been seeking to sell the motel property for some time, discussed the possibility of a sale with defendant-respondent Ross Burrup, a real estate broker. The substance of these discussions was hotly disputed at trial. However, it appears that Rowe disclosed that he felt the balance on the Lamberton contract, which totaled about $10,600 plus interest accrued since 1965, could probably be negotiated down to a $5,000 payment and that thereafter full title to the property would be acquired.

On December 11, 1968, Rowe executed and delivered a quitclaim deed conveying his interest in the property to Burrup. At trial Burrup and Rowe presented conflicting testimony as to the agreement underlying the execution and delivery of the deed. The district court found on the basis of substantial, although controverted evidence, that Rowe conditionally delivered the deed conveying his equitable interest to Burrup in furtherance of a joint venture. The court also found that although the gist of the agreement was that Rowe was to recover an undefined "equity" and that Burrup was to recoup his expenses incurred in effecting the transaction plus some measure of compensation, the entire agreement was too indefinite to be susceptible of enforcement.

It seems to have been intended that if Burrup, armed with the quitclaim deed from Rowe, could acquire the Lamberton outstanding interest for $5,000 he then would have the entire legal and equitable title to the property, be able to sell the same and the proceeds would be divided between him and Rowe.

Burrup had an associate acknowledge Rowe's signature on the quitclaim deed and it was recorded. Burrup succeeded in acquiring the Lamberton interest for $5,000 which amount was paid entirely by Burrup. Burrup thereafter recorded the warranty deed which conveyed the Lamberton interest to Burrup and his wife.

Rowe continued to live on the motel property. The motel's utilities were transferred to Burrup's name about March 1, 1969. During the period of February to June, 1969, $205 in rentals was collected from the operation of the motel and turned over to Burrup. It is contended that Burrup agreed Rowe could remain on the motel property by paying a $60 monthly rental. Such rent was not paid for the months of April, May and June 1969 and on June 5, 1969 Burrup caused an eviction notice to be served on Rowe. Burrup cancelled the utility services for the motel on June 13, 1969. Although not completely clear from the record, it appears that Rowe to some extent continued to occupy premises in the motel until September 10, 1969 when Burrup had Rowe's personal effects removed and placed in storage.

From September 1969 Burrup hired a succession of managers to operate the motel and for a period of 17 months entered into a contract of purchase with one Bench. After 17 months of unsuccessful operation Burrup repossessed the property from Bench in July of 1971.

Rowe filed his complaint in this action and Burrup answered and counterclaimed. A jury trial was originally ordered but thereafter Burrup moved for involuntary dismissal of Rowe's count III, relating to forcible entry. The trial court granted Burrup's motion and dismissed that portion of the action relating to forcible entry. Thereafter the district court decided that the remaining claims of Rowe's complaint were equitable in nature. Therefore special verdicts were submitted to the jury, answered and treated by the court as advisory only, pursuant to I.R.C.P. 49(a) and I.R.C.P. 39(c). Some of those special verdicts were accepted by the district judge and others were disregarded.

Rowe asserts that the district court erred in dismissing that portion of his complaint relating to forcible entry, I.C. § 6–301. On the facts and circumstances of this court as heretofore set forth, the trial court committed no error therein.

Rowe also contends that the district court erred in treating special verdicts of the jury as advisory only and in disregarding certain of the jury's findings in those special verdicts. In his memorandum decision, the district judge declared:

> "The Court is of the opinion the issues of this cause are purely of equitable cognizance, and neither party was entitled to a jury as a matter of right and that the jury's findings are advisory only and not binding on the Court . . ."

Rowe's complaint, following the striking of the claim relating to forcible entry, was framed in terms of an undefined trust relationship, an accounting and a claim that the conveyance was in fact a mortgage and requesting that the mortgage be foreclosed and sold. All of such claims were cognizable as equitable in nature.

As stated in 5 Moore's Federal Practice, § 39.10[3]:

> "By its nature, the function of the advisory jury is to enlighten the conscience of the trial court and the jury's verdict has no binding effect upon that court
>
> . . .
>
> ". . . The court may proceed to make its own independent finding of fact and conclusions of law, and its rejection of the advisory verdict is not subject to appellate review. The review on appeal is from the court's judgment as though no jury had been present."

Rowe's contentions regarding the trial court's instructions, the special verdicts of the jury and the court's consideration of them are without merit.

The district court awarded judgment to the effect that as of August 1, 1972 title to and possession of the motel was revested in

Rowe, subject to an equitable lien in Burrup for the amount of $7,320.41, with 6% annual interest from August 1, 1972. Burrup was denied recovery for the cost of repairs made to the motel during his possession, or for the taxes paid by him following 1968. Conversely, Rowe was denied recovery of the rentals received by Burrup during that time, or for the reasonable rental value of the premises. The principal contention by appellant is that the district court erred in designing its remedy and judgment. Appellant contends that the court erred by denying in effect the appellant an election of remedies in the trial court. Appellant asserts that he should have been allowed to recover monetary damages from Burrup in an amount equal to the value of the property at the time of Burrup's "conversion" less the costs which Burrup incurred in clearing the title to the property.

■■■ We hold that the trial court did not commit error in denying appellant the right to recover monetary damages for the value of the motel property. A court may grant all proper relief consistent with the proof and embraced within the issues framed, whether or not that particular relief is prayed for or not. Anderson v. Whipple, 71 Idaho 112, 227 P.2d 351 (1951); I.R.C.P. 54(c); I.C. § 10–704; 6 Moore's Federal Practice § 54.62. It is also clear that real property cannot be "converted" and there is no cause of action for the conversion of real property. Conversion in the legal sense applies only to personal property. Adair v. Freeman, 92 Idaho 773, 451 P.2d 519 (1969); Klam v. Koppel, 63 Idaho 171, 118 P.2d 729, (1941); Carver v. Ketchum, 53 Idaho 595, 26 P.2d 139 (1933). It is clear that the subject matter of this action is real property—the motel and land upon which it is situated.

■■■ Appellant also confuses the law of constructive trusts with that of express and resulting trusts.

"A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." Davenport v. Burke, 30 Idaho 599, 167 P. 481 (1917);

V., A. W. Scott, The Law of Trusts, § 462 (3d ed. 1967); Restatement of Restitution, § 160 (1937). While a trustee of an express trust may have active duties of management, a constructive trustee has only the duty to surrender the property subject to certain equitable adjustments. Scott, The Law of Trusts, § 462, 462.1. Under a constructive trust theory where the subject property is in possession of the person upon whom the constructive trust is imposed, the traditionally appropriate remedy is to compel the constructive trustee to convey the property to the constructive beneficiary. Scott, The Law of Trusts, § 462, 462.1, 462.3. Bogert & Bogert, Trusts & Trustees, § 472 (2d ed. 1960).

Appellant finally contends, in essence, that if the trial court was correct in ordering the property restored to Rowe, subject to Burrup's lien, there was nevertheless error in the trial court's judgment in refusing compensation to Rowe for the use of the motel during the time it was in Burrup's possession.

■■■ As a general principle, the trial court is to be granted broad discretion in fashioning equitable relief. See generally: 27 Am.Jur.2d, Equity 102, et seq. The trial court held in its memorandum decision "rental profits were non-existent." The record is clear that actual profits during the time of Burrup's possession were in fact almost non-existent. The only question remaining is whether in contrast to *actual* profits, the property, as found by the trial court had "no substantial net rental value." We find no clear uncontroverted evidence which would have required the trial court to have found that the property had a rental value as distinguished from actual rentals during the time of Burrup's possession.

It is provided in Restatement of Restitution, § 157:

"(1) A person under a duty to another to make restitution of property received by him or of its value is under a duty

(a) to account for the direct product of the subject matter received while in his possession, and

(b) to pay such additional amount as compensation for the use of the subject matter as will be just to *both* parties in view of the fault, if any, of either or both of them." (Emphasis supplied)

A determination as of (b), of requiring such additional amount as compensation for use of the property as would be just to both Burrup and Rowe was in the discretion of the trial court in the utilization of his equitable judgment. There is little controversy but that Burrup was correctly allowed in his lien the amount he expended in acquiring the Lamberton contract interest and his expenses incident thereto. While the trial court refused allowance to Rowe of any "rental value" during the time the property was in the possession of Burrup, the trial court conversely denied Burrup recovery for the admittedly large sums expended by him during the time of his possession of the property in payment of taxes, renovation of the property, etc. We cannot say as a matter of law or equity that the trial court erred by, in effect, setting off the expenses incurred by Burrup as against any rental profits or rental value that should have inured to Rowe during Burrup's possession of the property. The testimony indeed appears to indicate that at best this was a marginally, if at all, profitable business property and at the time of trial probably did not exceed $8,500 in total value.

The judgment of the trial court is affirmed. Costs to respondent.

DONALDSON, McQUADE, McFADDEN and BAKES, JJ., concur.